IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DESTINED C. GEORGE,**

    Plaintiff,

v.                                                                              Civil Action No. **3:19CV155**

**LT. MICHALEK,** *et al.***,**

    Defendants.

## MEMORANDUM OPINION

Destined C. George, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983.[1] The matter comes before the Court on the Motion for Summary Judgment filed by Defendants Michalek, Mouring, and Lord ("Defendants"). (ECF No. 32.) Defendants filed an appropriate *Roseboro* notice.[2] (ECF No. 34.) George has responded. (ECF No. 36.) For the reasons set forth below, the Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART.

### I. Summary of Allegations and Claims

In his Complaint, George alleges that, on December 5, 2018, while he was incarcerated at Sussex II Prison, he was repeatedly beaten by Defendants. (ECF No. 1, at 2–3.)[3] During the

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975)

[3] The Court employs the pagination assigned by the CM/ECF docketing system for the citations to the parties' submissions.

course of the beatings, George was maced by an unknown correctional officer. (*Id.*) Following the attack, George was not provided with medical care and Defendants took his identification card and gym shorts. (*Id.*) After the above incidents, George was transferred to Red Onion State Prison. (*Id.* at 3.)

George raises the following grounds for relief:

| | |
|---|---|
| Claim One | Defendants used excessive force against George's person in violation of the Eighth Amendment.[1] (*Id.* at 2.) |
| Claim Two | Defendants failed to provide George with medical care following the assault on his person. (*Id.*) |
| Claim Three | Defendants improperly confiscated George's personal property. (*Id.*) |

## II.  Summary Judgment Standard

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). "A fact is material if the existence or non-existence thereof could lead a jury to different resolutions of the case." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 628 (E.D. Va. 2016) (citing *Liberty Lobby*, 477 U.S. at 248). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322–24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

---

[1] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

2

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323–24). The ultimate inquiry in examining a motion for summary judgment is whether there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).

Defendants ask the Court to dismiss George's claims because George failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).[4] Because the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of their Motion for Summary Judgment, Defendants submit: (1) an affidavit from A. Critton, the Institutional

---

[4] That statute provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Ombudsman at Sussex II State Prison ("Critton Affidavit," ECF No. 33–1, at 1–3); (2) a copy of Operating Procedure 866.1, Offender Grievance Procedure ("Operating Procedure," ECF No. 33–1, at 4–17); (3) an affidavit of T. Trapp, the Grievance Coordinator at Red Onion State Prison ("Trapp Affidavit," ECF No. 42–1, at 1–2); and copies of George's grievance material (ECF No. 42–1, at 3–19.)  George responded by submitting multiple declarations and copies of his grievance related submission.  The following facts are established by the parties' submissions.

## II.  Relevant Facts

### A.  VDOC's Grievance Procedure

Operating Procedure § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints in the VDOC.  (Critton Aff. ¶ 5.)  Operating Procedure § 866.1 requires that, before submitting a formal grievance, the inmate must demonstrate that he or she has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints.  (Operating Procedure § 866.1.V.A.)  Generally, a good faith effort requires the inmate to submit an informal complaint form.  (*Id.* § 866.1.V.A.1–2.)  If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form.  (*Id.* § 866.1.VI.A.2.)

"The original *Regular Grievance* (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator."  (*Id.* § 866.1.VI.A.2.b.)  The offender must attach to the regular grievance a copy of the informal complaint or other documentation demonstrating their attempt to informally resolve the issue.  (*Id.* § 866.1.VI.A.2.a.)  Additionally, "[i]f 15 calendar days have expired from the date the *Informal Complaint* was logged without the

offender receiving a response, the offender may submit a *Grievance* on the issue and attach the *Informal Complaint* receipt as documentation of the attempt to resolve the issue informally." (*Id.* § 866.1.V.A.3.) A formal grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

"If the offender has been transferred, the offender should submit the *Informal Complaint* and the subsequent grievance to the facility where the issue originated." (*Id.* § 866.1.VI.2.b.i.) If the offender is indigent, "the Institutional Ombudsman/Grievance Coordinator will forward the *Informal Complaint* and subsequent grievance to the facility where the issue originated." (*Id.* § 866.1.VI.2.b.ii.) George's inmate account reflects that he was not indigent during the relevant period. (ECF No. 6.)

### 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to ensure that it meets the published criteria for acceptance. (*Id.* § 866.1.VI.B.) A grievance meeting the criteria for acceptance is logged in the system on the day it is received, and a "Grievance Receipt" is issued to the inmate within two working days. (*Id.* § 866.1.VI.B.3.) If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate within two working days. (*Id.* § 866.1.VI.B.4.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (*Id.* § 866.1.VI.B.5.)

## 2. Grievance Appeals

Up to three levels of review exist for a regular grievance. (*Id.* § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. (*Id.* § 866.1.VI.C.1.) If the offender is dissatisfied with the determination at Level I, he or she may appeal the decision to Level II, a review of which is conducted by the Regional Administrator, the Health Services Director, the Superintendent for Education, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she "qualifies for" an appeal to Level III. (*Id.* § 866.1.VI.C.2.g.)

## B. Evidence Pertaining to the Exhaustion of Administrative Remedies

### 1. George's Sworn Declarations

According to George, on December 7, 2018, he "mailed an informal complaint concerning this incident to Sussex 2." (ECF No. 36 ¶ 4.) On the informal complaint, George had stated:

> . . . I was beaten at Sussex 2 on the sidewalk area leading to housing unit four . . . by the above officers along with a fourth officer whose name I'm not certain of. All of this can be seen on camera. After the beating I was not taken to medical to be checked-out or detoxified from the mace.

(ECF No. 36–1, at 1.) George failed to receive a response by December 23, 2018, so he "proceeded with a regular grievance." (ECF No. 36 ¶ 5.) On that grievance, George wrote essentially the same information as he had on the informal complaint and mailed the same to Sussex II State Prison. (ECF No. 36–1, at 2.) When George failed to receive a response to his regular grievance, on January 23, 2019, he pursued a Level 2 appeal to the Regional Ombudsman. (ECF No. 36, at 1; ECF No. 36–1, at 3.)

6

### 2. George's Documentary Evidence

On February 7, 2019, George filed an informal complaint at Red Onion complaining about the assault on his person at Sussex II State Prison and the failure to provide medical care. (ECF No. 36–2, at 1.) On February 12, 2019, the staff at Red Onion informed him that the informal complaint had been sent to the investigator at Sussex II State Prison. (*Id.*) On February 27, 2019, George filed a regular grievance regarding the assault and the failure to provide medical care following the assault. (ECF No. 36–2, at 2.) On March 1, 2019, the grievance department at Red Onion refused the grievance at intake and stated that George needed to send his grievance to Sussex II, where the events occurred. (*Id.* at 3.)

### C. Defendants' Evidence Pertaining to Exhaustion

"Grievance records kept at Sussex II reflect that George has not submitted any regular grievance concerning the claims in this lawsuit." (Critton Aff. ¶ 9.)

### III. Exhaustion Analysis

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that section 1997e(a) "requires *proper* exhaustion." *Id.* at 93 (emphasis added). The Supreme Court

explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted). The United States Court of Appeals for the Fourth Circuit explained that,

> to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond.

*Id.* (internal citation and quotation marks omitted) (citing *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)).

The record reflects that George failed to exhaust his administrative remedies with respect to Claim Three, wherein he claims that Defendants improperly confiscated his personal property. However, there exists a material dispute of fact as to whether George has exhausted his administrative remedies with respect to Claims One and Two. Defendants contend that George never submitted any grievance regarding any of the claims in the lawsuit to Sussex II State Prison. George, however, swears that, in accordance with the directions of the Offender Grievance Procedure, he mailed an informal complaint and a regular grievance to Sussex II State Prison concerning Claims One and Two. Sussex II State Prison officials, however, failed to

acknowledge or respond to George's informal complaint and grievance. Thus, according to George's evidence, prison officials at Sussex II State Prison made the pertinent grievance process unavailable to him by failing to acknowledge or respond to his grievance material. *Id.* Given the foregoing law and facts, the Motion for Summary Judgment (ECF No. 32) will be GRANTED IN PART and DENIED IN PART. The Motion for Summary Judgment will be DENIED with respect to Claims One and Two and GRANTED with respect to Claim Three. Claim Three will be DISMISSED.

### IV. Conclusion

The Motion for Summary Judgment (ECF No. 32) will be GRANTED IN PART AND DENIED IN PART. Claim Three will be DISMISSED. Any party is welcome to file a Motion for Summary Judgment within sixty (60) days of the date of entry hereof. If Defendants renew their Motion for Summary Judgment on the grounds of lack of exhaustion, they should submit the pertinent prison mail logs and prisoner account information to dispute Plaintiff's contention regarding mailing an informal complaint and grievance to Sussex II State Prison in December of 2018. The parties also are free to submit a Motion for Summary Judgment addressing the merits of the claims before the Court. George's Motion to Set a Trial Date (ECF No. 40) will be DENIED WITHOUT PREJUDICE.

An appropriate Order will accompany this Memorandum Opinion.

/s/
M. Hannah Lauck
United States District Judge

Date: December 21, 2020
Richmond, Virginia