IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DESTINED C. GEORGE,**

    Plaintiff,

v.                                                                                           Civil Action No. **3:19CV155**

**LT. MICHALEK,** *et al.,*

    Defendants.

## MEMORANDUM OPINION

Destined C. George, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this action. By Memorandum Opinion and Order entered on March 21, 2022, the Court adopted the Report and Recommendation issued by the Magistrate Judge and dismissed the action. (ECF Nos. 81, 82.) Later that same day, the Court received George's Objections to the Report and Recommendation. (ECF No. 83.) Then, on April 1, 2022, the Court received George's Motion for Relief from Final Judgment ("Motion to Alter or Amend," ECF No. 84). *See MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 277–78 (4th Cir. 2008) (filings made within twenty-eight days after the entry of judgment construed as Rule 59(e) motions (citing *Dove v. CODESCO*, 569 F.2d 807, 809 (4th Cir. 1978))).

For the reasons set forth below, the Court will GRANT the Motion to Alter or Amend (ECF No. 84), VACATE the March 21, 2022 Memorandum Opinion and Order, and CONSIDER George's Objections. Nevertheless, the Court ultimately will OVERRULE George's Objections (ECF No. 83), ACCEPT and ADOPT the Report and Recommendation, and DISMISS the action.

### I. Procedural History Relevant to the Motion to Alter or Amend

On February 16, 2022, the Magistrate Judge conducted an evidentiary hearing on the issue of whether George had properly exhausted his administrative remedies prior to filing the present action. (ECF No. 74.) On March 1, 2022, the Magistrate Judge issue a Report and Recommendation and recommended the dismissal of George's remaining claims for lack of exhaustion. (ECF No. 76.) Counsel for Defendants certified that George was provided with a copy of the Report and Recommendation on March 2, 2022. (ECF No. 77.)

On March 21, 2022, the Court entered its Memorandum Opinion and Order adopting the Magistrate Judge's Report and Recommendation. (ECF Nos. 81, 82.) Later the same day, the Court received George's Objections. (ECF No. 83.) George's Objections were executed on March 14, 2022. (*Id.* at 3.) In his Motion to Alter or Amend, George swears that he deposited his Objections into the prison mail system on March 14, 2022. (ECF No. 84, at 1.) The Court deems George's Objections filed as of that date. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

Because it appears that George's Objections were timely filed, the Motion to Alter or Amend (ECF No. 84) will be GRANTED. The Court will VACATE the March 21, 2022 Memorandum Opinion and Order, and CONSIDER George's Objections.

### II. The Report and Recommendation Entered March 1, 2022

The Magistrate Judge made the following findings and recommendations:

### I. PROCEDURAL HISTORY

Plaintiff, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983 on March 6, 2019.[1] In his Complaint,

---

[1] 42 U.S.C. § 1983 provides, in pertinent part:
Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

2

George alleges that, on December 5, 2018, while he was incarcerated at Sussex II State Prison ("Sussex II"), he was repeatedly beaten by Defendants. (ECF No. 1, at 2–3.)[2] During the course of the beatings, George claims that he was maced by an unknown correctional officer. (*Id.*) George alleges that he was not provided with medical care following the assault and that Defendants took his identification card and gym shorts. (*Id.*) After the above incidents, George was transferred to Red Onion State Prison ("Red Onion"). (*Id.* at 3.)

George raised the following grounds for relief:

Claim One    Defendants used excessive force against George's person in violation of the Eighth Amendment.[3] (*Id.* at 2.)

Claim Two    Defendants failed to provide George with medical care following the assault on his person. (*Id.*)

Claim Three    Defendants improperly confiscated George's personal property. (*Id.*)

On March 17, 2020, Defendants moved for summary judgment, arguing that George's claims were barred because George failed to exhaust his administrative remedies prior to filing his claims in this Court as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e. (ECF Nos. 32 & 33.) By Memorandum Opinion and Order entered on December 21, 2020, the Court granted Defendants' Motion for Summary Judgment in part, dismissing Claim Three. *George v. Michalek*, No. 3:19CV155, 2020 WL 7497800, at *5 (E.D. Va. Dec. 21, 2020). The Court denied Defendants' Motion with respect to Claims One and Two but permitted Defendants to renew their motion. *Id.* In reaching that conclusion, the Court noted:

> there exists a material dispute of fact as to whether George has exhausted his administrative remedies with respect to Claims One and Two. Defendants contend that George never submitted any grievance regarding any of the claims in the lawsuit to Sussex II State Prison. George, however, swears that, in accordance with the directions of the Offender Grievance Procedure, he mailed an informal complaint and a regular grievance to Sussex II State Prison concerning Claims One and Two. Sussex II State Prison officials, however, failed to acknowledge or respond to George's informal complaint and grievance. Thus, according to George's evidence, prison officials at Sussex II State Prison made the pertinent grievance process unavailable to him by failing to acknowledge or respond to his grievance material.

*Id.* at *4.

On April 14, 2021, Defendants filed a second motion for summary judgment, again arguing that George failed to exhaust his administrative remedies prior to

---

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system for the citations to the parties' submissions.

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

3

filing suit in this Court. (ECF No. 51 & 52.) By Memorandum Opinion and Order entered on November 23, 2021, this Court denied Defendants' Second Motion for Summary Judgment and referred the case to the undersigned for an evidentiary hearing on the issue of whether George had exhausted his administrative remedies with respect to Claims One and Two. *George v. Michalek*, No. 3:19CV155, 2021 WL 5499028, at *2 (E.D. Va. Nov. 23, 2021).

The Court held an evidentiary hearing on February 16, 2022 in which both parties presented evidence and witnesses.

## II. APPLICABLE LAW

Before an inmate can bring a lawsuit challenging the conditions of his confinement, he must first exhaust his administrative remedies. "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001).

Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). Section 1997e(a) "requires *proper* exhaustion," *id.* at 93 (emphasis added), which "demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The prison's grievance procedures therefore "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted). The United States Court of Appeals for the Fourth Circuit explained that,

> to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond.

*Id.* (internal citation and quotation marks omitted) (citing *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)). Thus, in the instant case, the undersigned must determine whether George exhausted his administrative remedies by timely filing a grievance at Sussex II and pursuing it through all available levels of appeal, or whether his failure to exhaust can be excused because those procedures were made unavailable to him.

## III. FACTUAL BACKGROUND

### A. Evidence Presented Regarding the Virginia Department of Corrections Grievance Procedures

Central to the Court's inquiry is the Virginia Department of Corrections' grievance procedures. At the evidentiary hearing, Defendants introduced a copy of the "Offender Grievance Procedure," Operating Procedure 866.1 ("Ex. 1"), that was in effect from December 2018 through February 2019. (Ex. 1; Tr. 20:1–17.)[4] This procedure outlines the process for resolving inmate grievances regarding the conditions of the inmate's confinement. (Ex. 1 at IV.M.1.) The procedure sets forth the steps the inmate must take in order to have his or her grievances addressed, the time limitations for taking those steps, and other applicable rules relevant to the issue of exhaustion. (Ex. 1 at IV.–VII.)

According to Operating Procedure 866.1, before an inmate may submit a grievance, he must make a good faith effort to resolve the grievance informally. (Ex. 1 at V.A.1.) Generally, to fulfill the good-faith-effort requirement, the inmate must submit an informal complaint. (Ex. 1 at V.A.1–2.)

If the informal complaint does not result in resolution of the issue, the inmate may proceed to the next step and file a regular grievance. (Ex. 1 at VI.A.2.) An inmate must file a regular grievance "through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator." (Ex. 1 at VI.A.2.b.) When submitting the grievance, the inmate must attach a copy of the informal complaint or other documentation demonstrating his attempt to informally resolve the issue. (Ex. 1 at VI.A.2.a.) A regular grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence. (Ex. 1 at VI.A.1.) If the inmate has been transferred to another facility, the inmate "should submit the *Informal Complaint* and the subsequent grievance to the facility where the issue originated." (Ex. 1 at VI.A.2.b.i.)

Before the substance of a grievance will be reviewed, prison officials first conduct an "intake" review of the grievance to ensure that it meets the published criteria for acceptance. (Ex. 1 at VI.B.) If the grievance does not meet the criteria for acceptance, prison officials will complete the "Intake" section of the grievance and return the grievance to the inmate within two working days. (Ex. 1 at VI.B.4.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (Ex. 1 at VI.B.5.)

If the grievance meets the criteria for acceptance, the grievance will be logged into the system on the day it is received, and a "Grievance Receipt" will be issued to the inmate within two working days. (Ex. 1 at VI.B.3.) The facility's Institutional Ombudsman or Grievance Coordinator will review the grievance's content and establish an investigation plan. (Ex. 1 at VI.C.1.b.) Once the investigation is completed, the facility will provide the inmate with a response.

---

[4] All references to exhibits contained herein are to exhibits introduced at the evidentiary hearing.

5

(Ex. 1 at VI.C.1.d.) The response must include a determination as to whether the grievance was founded or unfounded and, if founded, what remedy was or will be taken. (Ex. 1 at VI.C.1.d.)

The facility's review of the grievance represents the first level of review available to the inmate. If the inmate is dissatisfied with the Level I response to the regular grievance, he may appeal the decision to Level II. Level II appeals are investigated by the Regional Ombudsman. (Ex. 1 at VI.C.2.a.) For most issues, Level II is the final level of review. (*See* Ex. 1 at VI.C.3.)

Pursuant to the policy, "[a]n offender meets the exhaustion of remedies requirement only when a Regular Grievance has been carried through the highest eligible level of appeal without satisfactory resolution of the issue." (Ex. 1 at IV.O.2.)

### B. Evidence Presented Regarding Exhaustion

*1. George's Testimony Regarding his December 2018 Exhaustion Attempt*

At the evidentiary hearing, George testified that after the December 5, 2018 incident, he made several attempts to follow the grievance process and exhaust his administrative remedies. He stated that he mailed an informal complaint and a handwritten "Certificate of Service" from Red Onion—where he had been transferred following the assault—to Sussex II on December 7, 2018. (Tr. 50:14–19, 51:5–7.) He testified that he received no response to the informal complaint, leading him to mail a regular grievance and handwritten "Certificate of Service" to Sussex II on December 23, 2018. (Tr. 51:2–4; 52:24–53:2.) George testified that he also did not receive a response to the regular grievance. (Tr. 53:24–25.) According to George, after failing to receive a response to the regular grievance, he mailed a grievance and handwritten "Certificate of Service" to the Western Regional Ombudsman on January 23, 2019, in an attempt to initiate a Level II appeal. (Tr. 53:24–54:12.) George testified that he also never received a response regarding the Level II appeal. (Tr. 54:23–55:2.)

George testified that he did not make or retain a copy of the informal complaint, regular grievance, or Level II appeal. (Tr. 62:3–63:21.) However, he testified that he made and retained a copy of each certificate of service that he mailed with the informal complaint, regular grievance, and Level II appeal. (Tr. 62:3–63:21.) George introduced each certificate of service—a total of three documents ("Exs. 4–6"). By way of example, the first certificate of service states that, on December 7, 2018, George "did, in fact, deposit/submit an Informal Complaint into the U.S. mail through Red Onion State Prison's mail procedure." (Ex. 4.) This statement is followed by a short description of the December 5, 2018 incident. (Ex. 4.) Although the certificates of service were attached to an affidavit George submitted in opposition to the Defendant's Motion for Summary Judgment (ECF No. 36–1), he testified that they were written immediately prior to his mailing of the informal complaint, regular grievance, and Level II appeal. (Tr. 61:18–23.) When asked why he would keep a copy of the certificates of service but not the informal complaint or grievance documents, George testified that inmates were not

6

permitted to make copies of informal complaints or other grievance documents. (Tr. 62:5–63:21.)

*2. George's Testimony Regarding his February 2019 Exhaustion Attempt*

George testified that, following his December 2018 attempts to invoke the grievance procedures, he tried to follow the grievance process and exhaust his administrative remedies a second time. According to George, he filed two documents with Red Onion: an informal complaint on February 7, 2019, and a regular grievance on February 27, 2019. (Tr. 54:23–55:16.)

In the February 7, 2019 informal complaint, which was submitted to Red Onion and introduced into evidence, George stated that he was "beaten at Sussex [II] on the sidewalk area leading to housing unit 4" and alleged that he was "not taken to medical to be checked-out." (Ex. 2.) The complaint requested that the security footage be viewed and saved for litigation. (Ex. 2.) The bottom half of George's informal complaint, which is reserved for prison officials to respond, was completed by Lieutenant Joe Fannin, who testified that he worked as an Institutional Investigator at Red Onion at the time that George submitted the complaint. (Ex. 2; Tr. 11:2–7.) Fannin responded to George's informal complaint by answering: "This has been forwarded to the Investigator at Sussex [II] for her review." (Ex. 2; Tr. 13:8–10.) Fannin testified that, after he answered the informal complaint, he emailed a copy to the institutional investigator at Sussex II, but he never received a response. (Tr. 12:2; 13:11–15.) George testified that he also never received a response. (Tr. 55:9–16.)

George's February 27, 2019 regular grievance, which he submitted to Red Onion and which was introduced into evidence, states that he "was beaten at Sussex [II] on the sidewalk area leading to housing unit 4" and alleges that the assault was caught on camera. (Ex. 3, at 1.) In the regular grievance, George requests that prison officials "[p]lease view camera [footage] from all angles and save footage for later litigation." (Ex. 3, at 1.) On the "Intake" section of the grievance, a Red Onion prison official checked a box indicating that the grievance was not being accepted and was instead being returned to the inmate because the grievance filed was "Regarding Another Institution." (Ex. 3, at 2.) The response also states: "This grievance is being returned to you for you to submit to: Sussex [II]–Request for video footage needs to be sent to Sussex [II] Investigator." (Ex. 3, at 2.) The grievance is stamped as having been received on March 1, 2019, and it was signed by the "Institutional Ombudsman/ Grievance Coordinator." (Ex. 3, at 2.)

George testified that, on June 26, 2019, he made an "Offender Request" to Red Onion for copies of the informal complaint and regular grievance he filed in February 2019. (Tr. 58:4–59:6.) George testified that he made the request because he had not received a response to those grievance documents. (Tr. 60:24–61:1.) George introduced the request, which states:

> I mail[ed] to you an Informal Complaint about an incident that occurred at Sussex [II] the complaint was sent to you 2/7/2017 and your response was that it was forwarded to Sussex [II] could you send a copy or verification that it was forwarded? Also, could you send the following grievance of that complaint?

(Ex. 7.)

7

The document reflects that a prison official responded to the request, stating: "Mr. George, Attached are copies of what is on record here at [Red Onion]." (Ex. 7.) The parties stipulated that the February 7, 2019 informal complaint and the February 27, 2019 regular grievance were the only documents attached to the form. (Tr. 60:11–15.)

George testified that, in addition to submitting the February grievance documents to Red Onion, he also pursued a Level II appeal by mailing a copy of the regular grievance to the Western Regional Ombudsman on April 3, 2019. (Tr. 66:2–9.) George testified that, similar to his December 2018 grievance submissions, he also mailed a copy of a handwritten "Certificate of Service" to the Regional Ombudsman. (Tr. 66:2–9; Ex. 8.) George testified that he did not make or retain a copy of the Level II appeal, but a copy of the certificate of service was introduced into evidence. (Tr. 65:6–23.)

### 3. Virginia Department of Corrections Testimony

Michelle Walker, the operations manager at Sussex II, and Cathy Meade, the grievance coordinator at Red Onion, testified on behalf of the Defendants.

Walker testified that she had experience with the grievance procedures, having served for three years as the grievance coordinator at Sussex II State Prison. (Ex. 18:6–7.) Walker testified that George was housed at Sussex II from approximately June 2018 through December 2018, including on December 5, 2018, when the incident at issue allegedly occurred. (Tr. 26:17–24; 27:17–18.)

Walker explained that, when a grievance meeting the criteria for acceptance is received by an institution, it is "logged" into CORIS, the electronic case management system used by the Virginia Department of Corrections. (Tr. 23:6–16.) In addition, a physical copy is placed in the inmate's file at the facility. (Tr. 23:9–12.) Walker testified that, if the grievance does not meet the published criteria for acceptance, it is not logged into CORIS, but a physical copy is still retained in the inmate's file. (Tr. 23:21–24.) Similarly, Walker stated that if a grievance is appealed and accepted, the regional office would log that information into CORIS. (Tr. 25: 20–23.) However, if the appeal did not meet the required criteria, the regional office would send copies of all the material back to the facility to be kept in the inmate's file and the originals would all be returned to the inmate. (Tr. 26:3–7.)

Walker testified that she reviewed both CORIS and George's Sussex II physical file and confirmed that there was no record of any grievance or Level II appeal ever having been filed regarding the December 5, 2018 incident. (Tr. 26:17–27:2.) Walker stated that she did find a record of the February 7, 2019 informal complaint George submitted to Red Onion. (Tr. 27:10–11.)

Walker also testified that Sussex II had a record of other complaints and grievances George had filed—all unrelated to the December 5, 2018 incident—while George was housed there. (Tr. 27:21–25.) Walker testified that the records showed that George had filed three informal complaints in October 2018—one involving his shoes; one involving an allergy to peas and potatoes; and one involving a medical issue—as well as another informal complaint in November 2018 regarding his laundry. (Tr. 28:1–11.) Walker testified that each of those complaints was properly logged and maintained. (Tr. 28:16–18.) Walker also

8

testified that the prison responded to each of those complaints in a timely manner. (Tr. 28:13–15.)

When asked about an inmate's options if he did not receive a receipt within two days of submitting an informal complaint, Walker testified that the inmate should be on alert to the fact that the informal complaint may not have been received. (Tr. 33:5–21.) Walker stated that, in that event, the inmate could file another informal complaint. (Tr. 33:17–21.)

Cathy Meade, the grievance coordinator at Red Onion, testified that she reviewed George's grievance file at Red Onion. (Tr. 35:7–8, 38:11–15.) During that review, she found the February 7, 2019 informal complaint in George's physical file and on the CORIS system. (Tr. 38:16–24, Tr. 40:11–17.) Meade testified that she also found the February 27, 2019 regular grievance in George's physical file. (Tr. 40:22–41:8.) She stated that the regular grievance was marked as having been received on March 1, 2019, by the grievance department but that the grievance was rejected because it pertained to an incident at another institution. (Tr. 42:4–13.) Meade explained that the original grievance would have been returned to George along with the notification that, if he disagreed with the decision, he had five calendar days from the date of the receipt to appeal to the Regional Ombudsman for review of the decision. (Tr. 43:1–11.) Meade also testified that if George had appealed the intake decision to the Regional Ombudsman, a notation would have been made on the grievance, but George's grievance did not contain this notation. (Tr. 43:6–44:2.) Upon being shown the certificates of service that George purportedly attached to his grievance submissions, Meade stated that these documents were not in George's file and that she had never seen them before. (Tr. 70:13–71:13.)

Meade also testified regarding the copying policies at Red Onion. She stated that George's testimony that inmates are not allowed to make copies of grievances or complaints was inaccurate. (Tr. 71:4–12.) She testified that inmates are permitted to copy informal complaints and grievances prior to submitting them and that many inmates do so in order to have a copy for their records. (Tr. 72:8–17.) She stated that inmates can also request copies from their counselors of anything that they file, including informal complaints and regular grievances. (Tr. 71:11–12.)

Meade testified that when she reviewed George's file, she found that George had filed several other informal complaints and regular grievances at Red Onion—all unrelated to the December 5, 2018 incident—and that each of those had been appropriately logged and recorded. (Tr. 46: 9–13.) Specifically, she testified that George had filed an informal complaint about his property in February 2019, a regular grievance about that property in March 2019, a resubmission of that regular grievance regarding property in March 2019; two informal complaints concerning recreation and showers in April 2019, an informal complaint concerning an allergy to potatoes and peas in April 2019, and an emergency grievance regarding a financial issue in May 2019. (Tr. 45:13–46:8.)

9

## IV. ANALYSIS

As discussed above, inmates must exhaust any available administrative remedies before filing a complaint challenging prison conditions in federal court. 42 U.S.C. § 1997e(a). To exhaust administrative remedies, inmates must satisfy the prison's grievance procedure. *Jones*, 549 U.S. at 218.

Because it is an affirmative defense, Defendants bear the burden of proving that George failed to exhaust his administrative remedies. *See Jones*, 549 U.S. at 216. "Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the plaintiff to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the plaintiff." *Lordmaster v. Augusta Corr. Ctr. Pers.*, No. 7:13-CV-00506, 2014 WL 3359389, at *1, n. 2 (W.D. Va. July 9, 2014) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).

Here, George's Complaint arises from an assault that he alleges occurred on December 5, 2018, at Sussex II. Pursuant to Operating Procedure 866.1, in order to exhaust his administrative remedies, George was required to file a regular grievance within thirty days—by January 4, 2019—and pursue that grievance through the appeals process as necessary. Defendants have submitted testimony and evidence that no regular grievance was received within that timeframe and that no appeal was ever pursued. George, on the other hand, testified that he twice attempted to exhaust his administrative remedies—first in December 2018 via grievance documents he claims he sent to Sussex II, and second in February 2019 via grievance documents he sent to Red Onion. He claims to have pursued a Level II appeal each time. To determine if George exhausted his administrative remedies, this Court must resolve this factual dispute.

The Court finds that George's testimony that he mailed the December 2018 grievance documents—the December 7, 2018 informal complaint, the December 23, 2018 regular grievance and the January 3, 2019 appeal—lacks credibility. First, there is an absence of any evidentiary documentation supporting George's testimony. Walker, the operations manager at Sussex II, credibly testified that the Virginia Department of Corrections has no record of George filing an informal complaint, regular grievance, or Level II appeal at Sussex II regarding the alleged December 5, 2018 incident. Importantly, those documents were allegedly sent to distinct individuals and entities—the grievance documents to Sussex II and the appeal to the Regional Ombudsman's office—making any inadvertent or intentional disappearance of the documents less likely.

Furthermore, the record establishes that George was familiar with the grievance process, that he understood how to submit grievances documents, and that he was aware that he could resubmit grievance documents. Walker's review of CORIS and George's physical file at Sussex II revealed a number of informal complaints and grievances that had been appropriately filed and addressed by Sussex II. Meade similarly testified regarding George's file at Red Onion. Importantly, Walker's testimony also indicates that George's informal complaints and grievances were not routinely ignored by Sussex II. Similarly, George is unable to produce a copy of any grievance document he alleges he submitted.

10

Second, George's own documentary evidence calls into question his claim that he actually mailed the December 2018 grievance documents. For example, neither his February 7, 2019 informal complaint nor his February 27, 2019 grievance make any mention of his December 2018 attempts. Similarly, in the "Offender Request," George explicitly requested copies of his previously filed grievances, but only asks for the February 7, 2019 informal complaint and the February 27, 2019 regular grievance—not his December 2018 attempt. Because the February 2019 grievance documents and the "Offender Request" refer to the same purported beating of Plaintiff, it is reasonable to assume that Plaintiff would have mentioned his December 2018 grievance documents; however, he did not.

Finally, George's testimony regarding the creation, copying, and mailing of the certificates of service is incredible. George testified that at the time he completed and mailed the December 2018 informal complaint, grievance, and the Level II appeal, he also wrote and mailed the certificates of service. He testified that he copied the certificates of service, but he was unable to produce copies of the informal complaint, grievance, or Level II appeal. Thus, according to George, he made a copy of his handwritten certificates of service but failed to make copies of the operative documents. In an attempt to explain his actions, George testified that inmates were not permitted to make copies of informal complaints and grievances, but he provided no explanation for this prohibition. In addition, George's testimony was directly contradicted by that of Meade, who stated that inmates may make copies of informal complaints and grievances before they are filed and that they may also request copies of documents they have filed.

Further, the certificates of service were not attached to or referenced in George's Complaint, and were only produced by George on April 13, 2020, as an attachment to his affidavit opposing Defendants' summary judgment motion. (ECF No. 36.) The documents themselves bear no stamp or objective indication of their date of creation. And finally, although George later drafted the February grievance documents, he did not similarly attach certificates of service to those documents. Based on this evidence, I do not find credible George's testimony that he filed a December 7, 2018 informal complaint and a December 23, 2018 regular grievance at Sussex II or that he pursued a Level II appeal on January 23, 2019.

Conversely, the evidence does support George's testimony that he filed the February grievance documents—the February 7, 2019 informal complaint and the February 27, 2019 regular grievance—at Red Onion. However, those documents, even if presumed to be proper,[5] were untimely. Pursuant to Operating Procedure 866.1, "[a] formal grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control." (Ex. 1 at VI.A.1.). Thus, George had until January 4, 2019—thirty days from the December 5, 2018 incident—in which to file a grievance at Sussex II. By the time that George initiated the grievance process on February 7, 2019 with his informal complaint, his grievance was already a month

---

[5] Because the incident occurred at Sussex II, George was required to submit his grievances to that facility. George did not do so, instead submitting both the informal complaint and regular grievance to Red Onion.

11

late. Accordingly, George did not exhaust his administrative remedies with these untimely submissions.[6] *See Jones*, 549 U.S. 199 at 217–18 (stating that the exhaustion requirement is "not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy") (citing *Woodford*, 548 U.S. at 93–95).

Even setting aside the untimeliness of George's second attempt to exhaust his administrative remedies, George also failed to make a Level II appeal before he filed suit in this Court. *See Woodford*, 548 U.S. at 90 (requiring an inmate to pursue the grievance through all available levels of appeal prior to bringing suit). For the same reasons that George's testimony about the December 2018 exhaustion attempt lacks credibility, George's testimony claiming that he filed a Level II appeal on April 3, 2019, is likewise unbelievable. There is no electronic or physical record of George having filed an appeal, George could not produce a copy of the appeal, and George's testimony regarding making and copying the certificate of service allegedly attached to the appeal was incredible.

In addition, George filed his Complaint in this Court on March 6, 2019, and testified he mailed his Level II appeal to the Regional Ombudsman on April 3, 2019. Thus, even if the Court were to credit George's testimony on this point—which it does not—George's own testimony establishes that, instead of following the procedure, he filed his Complaint in this Court approximately one month *prior* to his attempt to file a Level II review. For these reasons, George failed to exhaust his administrative filings with this subsequent round of submissions.

## V. PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

In addition to the above summary and analysis, the undersigned submits the following formal factual findings, conclusions, and recommendations:

1. In order to exhaust his administrative remedies, George was required to file a regular grievance by January 4, 2019—30 days following the date of the incident—and pursue that grievance through all available levels of appeal.
2. George did not file an informal complaint on December 7, 2018, or a regular grievance on December 23, 2018, regarding the alleged assault at Sussex II. George also did not attempt to pursue a Level II appeal by mailing a grievance to the Regional Ombudsman on January 23, 2019.
3. The informal complaint filed on February 7, 2019, and the regular grievance filed on February 23, 2019, at Red Onion were untimely.
4. George filed a Complaint with this Court on March 4, 2019, prior to following the grievance procedure through every level of appeal.
5. George failed to exhaust his administrative remedies prior to filing suit in this Court.

---

[6] It is unclear from the record whether Sussex II ever received the February 7, 2019 informal complaint that Lt. Fannin testified he forwarded to Sussex II's institutional investigator. But even assuming Sussex II failed to respond to the February 7, 2019 informal complaint—a fact which would weigh in George's favor—that fact is overwhelmingly countered by other evidence that George simply did not mail an informal complaint on December 7, 2018.

> 6. George filed numerous complaints at both Red Onion and Sussex II while housed at those facilities, and the facilities properly maintained and responded to those grievance documents. There is no evidence that the administrative process was made unavailable to him.
>
> ## VI. CONCLUSION
>
> For the reasons stated above, it is RECOMMENDED that the Court enter judgment in favor of Defendants on George's Claims One and Two because he did not exhaust his available administrative remedies.

(Report and Recommendation 1–18 (alterations in original).)

## III. Standard of Review

"The magistrate [judge] makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court." *Estrada v. Witkowski*, 816 F. Supp. 408, 410 (D.S.C. 1993) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). "[W]hen a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations," *de novo* review is unnecessary. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (citations omitted).

## IV. George's Objections

In his First Objection, George contends that:[7]

> The Magistrate permitted C. Meade to testify for Defendants without being listed in their proposed witnesses even though T. Trapp was listed and still [is] Red

---

[7] The Court corrects the capitalization, punctuation, and spelling in the quotations from George's submissions. The Court employs the pagination assigned by CM/ECF.

13

> Onion's current Grievance Coordinator at the time of the hearing making the hearing prejudice [sic] to plaintiff.

(ECF No. 83, at 1.) As pertinent here, Defendants listed among their witnesses, "T. Trapp, or Current Red Onion State Prison Grievance Coordinator." (ECF No. 67, at 1.) At the evidentiary hearing, Defendants called Cathy Meade, the current Grievance Coordinator at Red Onion State Prison. (ECF No. 75, at 35.) After Ms. Meade had concluded her initial testimony, George objected, "I don't see Meade, the Red Onion grievance coordinator" on the witness list. (*Id.* at 48.) Thereafter, George conceded that he had "misread" the witness list and that he did not wish to raise an objection. (*Id.* at 49.)

Because Defendants properly listed Ms. Meade, the current Grievance Coordinator at Red Onion, on the witness list and George dropped his objection to Ms. Meade's testimony at the hearing, George's First Objection lacks merit and will be OVERRULED.

In his Second Objection, George states:

> Meade testified that my testimony that inmates are not allowed to make copies was inaccurate which is false; being that Plaintiff was an indigent & an intake offender and required a court order to receive photocopies at the relevant time period per VDOC's Operating Procedure 866.3(VI)(B)(2) & Red Onion's "Inmate orientation handbook" under : Indigent Inmate (legal copies) (page #12). Plaintiff has submitted operating procedure 866.3 as: Exhibit (A) & Plaintiff has submitted Red Onion's "Inmate orientation handbook" as: Exhibit (B).

(ECF No. 83, at 1.)

George's Second Objection is disingenuous. George now suggests that he testified that he could not make copies of an informal complaint or other grievance material because he was indigent. That is simply not true. George testified that he could make copies of his "certificates of service," but that he was "not allowed" to make copies of informal complaints or other

14

grievance material.[8] (ECF No. 75, at 62–63.) George's lack of copies of the December 2018 informal complaint and other grievance material was not attributable to George's indigency, but to the fact that they never existed. George's Second Objection will be OVERRULED.

In his Third Objection, George states: "Meade testified that she had never seen the certificates of service which has no relevance because she wasn't employed at Sussex 2 where they were mailed nor was she involved in the assistance with my February 2019 exhaustion attempts." (ECF No. 83, at 1.) This objection "do[es] not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Magistrate Judge did not rely on this aspect of Meade's testimony in concluding that George had not properly exhausted his administrative remedies. Accordingly, George's Third Objection will be OVERRULED.

---

[8] As noted by the Magistrate Judge:

> George testified that he did not make or retain a copy of the informal complaint, regular grievance, or Level II appeal. (Tr. 62:3–63:21.) However, he testified that he made and retained a copy of each certificate of service that he mailed with the informal complaint, regular grievance, and Level II appeal. (Tr. 62:3–63:21.) George introduced each certificate of service—a total of three documents ("Exs. 4–6"). By way of example, the first certificate of service states that, on December 7, 2018, George "did, in fact, deposit/submit an Informal Complaint into the U.S. mail through Red Onion State Prison's mail procedure." (Ex. 4.) This statement is followed by a short description of the December 5, 2018 incident. (Ex. 4.) Although the certificates of service were attached to an affidavit George submitted in opposition to the Defendant's Motion for Summary Judgment (ECF No. 36–1), he testified that they were written immediately prior to his mailing of the informal complaint, regular grievance, and Level II appeal. (Tr. 61:18–23.) When asked why he would keep a copy of the certificates of service but not the informal complaint or grievance documents, George testified that inmates were not permitted to make copies of informal complaints or other grievance documents. (Tr. 62:5–63:21.)

(ECF No. 76, at 7–8.)

15

In his Fourth Objection, George complains that: "The Magistrate abused her discretion by denying Plaintiff substantial evidence because he couldn't meet a requirement to produce electronic case filing numbers being Plaintiff is a pro se litigant and proceeding in forma pauperis with no access to the internet. Making the evidentiary hearing prejudice [sic]." (ECF No. 83, at 2.) In anticipation of the evidentiary hearing, the Magistrate Judge issued a Memorandum Order on December 6, 2021, with respect to the witnesses and evidence the parties wished present at the evidentiary hearing. (ECF No. 64.) As pertinent here, the Court instructed George to:

> File a motion with the Court if there are documents or exhibits previously filed in this civil action that he wishes to have available for use at the evidentiary hearing. Such documents or exhibits must be identified by the ECF number and a brief description that demonstrate their relevance to Plaintiff's claims.

(*Id.* at 2.) The Court ultimately granted in part and denied in part George's motion regarding documents or exhibits previously filed with the Court. (ECF No. 69, at 2.) The Court noted that "Plaintiff has failed to comply with the Court's December 6, 2021 Order by failing to identify the documents by ECF number and by failing to include any description of the documents' relevance." (*Id.* at 3.) Nevertheless, the Court agreed to provide George with copies of numerous documents that he had identified by title. (*Id.*) As pertinent here, the Court declined to provide George with a copy of every document that had been filed electronically. (*Id.*)

George fails to identify what document he required a copy of (but was denied), much less demonstrate how any document would have proven that he exhausted his administrative remedies. Therefore, he fails to demonstrate how he was prejudiced. Accordingly, George's Fourth Objection will be OVERRULED.

George's next three Objections concern his certificates of service and are best addressed collectively. In these Objections, George states:

16

> 5. The Magistrate prejudicely found Plaintiff's testimony lacks credibility in regard to my December 2018 exhaustion because Plaintiff only had certificates of services carbon copies being they're the only thing provided & recommended during the relevant time period.
> 6. The Magistrate prejudicely found Plaintiff exhaustion attempt not credible because I didn't mention them in my second exhaustion attempt because it is prohibited and would've been rejected at intake for: "more than one issue" per the intake rejection reasons listed on the back of the grievance form.
> 7. The Magistrate abused her discretion when she assumed Plaintiff didn't attach certificates of service to the February grievance documents without any supporting evidence from any party or justification on record.

(ECF No. 83, at 2.)

The Magistrate Judge appropriately concluded that George's testimony, that he attempted to exhaust his administrative remedies by filing an informal complaint and a grievance in December of 2018, was not credible. In reaching that conclusion, she reasonably concluded that George could have made copies of those grievance documents, but did not do so and the lack of such copies indicated that he was not being truthful. Accordingly, George's Fifth Objection will be OVERRULED. Relatedly, the Magistrate Judge appropriately considered George's failure to mention his December 2018 exhaustion attempts in his February 7, 2019 informal complaint, his February 27, 2019 grievance, or his "Offender Request," indicated no effort at exhaustion had occurred in December of 2018. Accordingly, George's Sixth Objection will be OVERRULED. Lastly, no "certificates of service" were produced for George's February 2019 Grievance documents. George did not suggest he had created "certificates of service" for his February 2019 grievance documents. Accordingly, the Magistrate Judge appropriately concluded none existed. George's Seventh Objection will be OVERRULED.

In his Eighth Objection, George states, "[t]he Magistrate prejudicely admitted document 52–2[9] into evidence against Plaintiff on behalf of the Defendants but refused to allow Plaintiff

---

[9] This document was an Informal Complaint dated February 7, 2019. (ECF No. 75, at 29–30.)

17

the same evidence to be admitted on his behalf, in violation of the Federal Rules of Evidence, Rule 105[10]." (ECF No. 83, at 2.) George fails to explain how the admission of this exhibit was incorrect, much less how he was prevented from utilizing this document to prove his case. Accordingly, George's Eighth Objection will be OVERRULED.

In his Ninth Objection, George states:

> The Magistrate acknowledges the fact that an inmate must attach a copy of the informal complaint to be eligible for the next level of grievance process, but doesn't find the administrative remedies unavailable after Lt. Fanin testified that Sussex 2 officials didn't process my informal complaint that he personally faxed to Sussex 2, prejudicely disregarding that testimony and accompany exhibits.

(ECF No. 83, 2–3.) The Magistrate Judge acknowledged the above fact and Lt. Fanin's testimony, but correctly concluded: "By the time that George initiated the grievance process on February 7, 2019 with his informal complaint, his grievance was already a month late. Accordingly, George did not exhaust his administrative remedies with these untimely submissions." (ECF No. 76, at 16 (citation omitted) (footnote omitted).) George's Ninth Objection will be OVERRULED.

Finally, in his Tenth Objection, George insists, "[t]he Magistrate abused her discretion by finding my evidence and testimony regarding fulfilling the exhaustion requirement not credible because Plaintiff did not 'mention' or 'reference the certificates of service in my Complaint.'" (ECF No. 83, at 3.) The Magistrate Judge actually stated: *"the certificates of service were not attached to or referenced in George's Complaint*, and were only produced by George on April 13, 2020, as an attachment to his affidavit opposing Defendants' summary judgment motion."

---

[10] That rule provides: "If the court admits evidence that is admissible against a party or for a purpose--but not against another party or for another purpose--the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105.

18

(ECF No. 76, at 15 (emphasis added) (citation omitted).) The standardized form that George utilized for filing his complaint stated:

> Have you filed any grievances regarding the facts of your complaint?
> Yes _____ No _____
> 1. If your answer is Yes, complete the enclosed verified statement indicating the result. Please attach evidence of your exhaustion of all available grievance procedure.

(ECF No. 1, at 1.) George checked the "yes" space, but failed to attach any evidence that he had exhausted the grievance procedure as directed. The Magistrate Judge appropriately considered this omission and the failure to mention his "certificates of service" as indicating that George fabricated those documents in order to avoid summary judgment. Accordingly, George's Tenth Objection will be OVERRULED.

## V. Conclusion

George's Objections (ECF No. 83) will be OVERRULED. The Court has determined that the Report and Recommendation is correct on its merits. The Report and Recommendation (ECF No. 76) will be ACCEPTED and ADOPTED. George's Motion for Hearing Transcript (ECF No. 78) will be DENIED WITHOUT PREJUDICE for the reasons set forth in the March 21, 2022 Memorandum Opinion. (ECF No. 81.) George's claims and the action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 8-19-2022
Richmond, Virginia

/s/ M. Hannah Lauck
United States District Judge